**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **CARLOS IVAN ACOSTA RIVERA, et al.,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-15-CV-00021-KC** |
| | § | |
| **UNITED STATES OF AMERICA, et al.,** | § | |
| | § | |
| | § | |
| **Defendants**. | § | |

**<u>ORDER</u>**

On this day, the Court considered Defendant United States' Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss III"), ECF No. 68.  For the reasons set forth herein, the Motion is **GRANTED**.

I.      **BACKGROUND**

A.      **Factual Background**

This case stems from a March 7, 2013, vehicle crash that occurred near Hudspeth County, Texas, on Interstate 10.  Compl. of Sept. 15, 2015 ("Am. Compl.") ¶ 6, ECF No. 65; Pl.'s Resp. in Opp'n to Def. USA's Am. Mot. to Dismiss ("Resp. II") ¶ 2, ECF No. 61; Def. USA's Am. Mot. to Dismiss ("Mot. to Dismiss II"), ECF No. 59.  Plaintiffs—who are all residents of the country of Mexico—were passengers in a federally-owned bus driven by Defendant Pedro Molina ("Molina") when Molina struck Defendant DZT Inc.'s ("DZT") commercial vehicle.  Am. Compl. ¶ 1, 6; Pl.'s Resp. in Opp'n to Def. USA's Am. Mot. to Dismiss Pl.'s Am. Compl. of Sept. 15, 2015 ("Resp. III") ¶ 3, ECF No. 75.

At the time of the collision, Plaintiffs were in the custody of United States Immigration and Customs Enforcement ("ICE") and were being transported either to or from the Otero County Processing Center, in Chaparral, New Mexico.  Mot. to Dismiss II, Ex. 1 ("Anderson Decl.") ¶¶ 8-14, ECF No. 59-2; Resp. II, Ex. 2 ("Anderson Dep.") at 29.[1]  ICE had contracted with Otero County, through an Intergovernmental Service Agreement ("IGSA"), to house ICE detainees at the Otero County Processing Center.  Mot. to Dismiss II, Ex. 2 ("Ramirez Decl.") ¶¶ 3-4, ECF No. 59-5.  The terms of the IGSA made Otero County "responsible for the detention, care and transportation of ICE detainees housed at Otero County Processing Center."  *Id.*  Otero County, in turn, contracted with a private company, Management Training Corporation ("MTC"), "delegating to MTC the daily operations of the Otero County Processing Center."  *Id.* at ¶ 5; *see also* Anderson Dep. 34 (explaining that MTC is a subcontractor to Otero County).

All individuals performing duties under the IGSA were required to pass a background check conducted by the federal government.  Ramirez Decl. ¶ 13.  Otero County also had to submit a staffing plan to ICE pursuant to the IGSA.  *Id.*  The IGSA required Otero County to pay minimum wages set by the Department of Labor; in the relevant geographical area, these wages were $15.52 per hour for bus drivers and $18.66 per hour for detention officers.[2]  Resp. II, Ex. 3 ("Terry Dep.") at 21-23.  The IGSA further stated that, in providing transportation services, Otero County must comply with applicable state and federal laws.  Anderson Dep. 22.

When transportation of detainees was necessary, ICE would provide to Otero County a list of detainees who needed transportation, and ICE would reimburse Otero County for fuel and

---

[1] Because this Order addresses whether the Court has subject matter jurisdiction, the Court can consider evidence outside the pleadings and make determinations regarding conflicting evidence related to the jurisdictional issue.  *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009); *Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir. 1981).

[2] Molina stated that he was paid $18.66, presumably an hourly rate, although he did not specify.  Resp. II, Ex. 1 ("Molina Dep.") at 13.

for the time that it took to transport the detainees. *Id.* at 15-19, 28.  In addition, ICE owned the bus that Molina drove at the time of the collisions, *id.* at 20, although Molina was not aware of this fact.  Resp. II, Ex. 1 ("Molina Dep.") at 22.

Molina worked as a detention officer at the Otero County Processing Center, and he was hired by and paid by MTC.  *Id.* at 5, 13, 22.  Pursuant to the IGSA, Molina underwent an extensive background check by the federal government before he was hired by MTC.  *Id.* at 5-11; *see* Ramirez Decl. ¶ 13.  Molina understood that if he was not approved by ICE, MTC would not hire him, and that if ICE revoked its approval, MTC would terminate him.  Molina Dep. 12.  After Molina was hired, an MTC employee gave him a driving test.  *Id.* at 14-15.

Once Molina was hired, a "sergeant" gave Molina orders about which detainees to drive and where.  *Id.* at 17-18.  The sergeant was not an employee of the United States.  *Id.*  Molina did not interact directly with anyone from the United States government in performing his job.  *Id.*  ICE did not pay or direct Molina or review his job performance.  Anderson Dep. 35.  Instead, Molina received direction from ICE through a "chain of command"; that is, ICE employees gave instructions to individuals who worked with Molina, and these individuals then passed the instructions on to Molina.  Molina Dep. 17-18.  However, no one from ICE gave instructions directly to Molina.  *Id.*

### B.    Procedural Background

Plaintiffs filed the Original Complaint in this Court on January 30, 2015.  *See generally* Orig. Compl., ECF No. 1.  In the Original Complaint, Plaintiffs bring causes of action against the United States, Pedro Molina, FedEx Package, FedEx Corporation, DZT, and Zoran Tesich based on Plaintiffs' injuries arising out of the collision.  *See id.* ¶¶ 7-11.  With regard to the claims

against the United States, the subject of this Order, Plaintiffs seek recovery under the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  *See id.* ¶¶ 7-9; Am. Compl. ¶¶ 7-9.

On April 10, 2015, in response to the Original Complaint, the United States filed a

Motion to Dismiss ("Motion to Dismiss I"), ECF No. 29.  On May 8, 2015, Plaintiffs filed a

Motion to Stay Ruling Pending Jurisdictional Discovery and Subject Thereto, Response in

Opposition to Defendant United States' Motion to Dismiss, ECF No. 40.  On May 14, 2015, the

United States filed a Response to Plaintiffs' Motion to Stay Ruling Pending Jurisdictional

Discovery and Subject Thereto, Response in Opposition to Defendant United States' Motion to

Dismiss, ECF No. 44.

Meanwhile, on April 22, 2015, the United States filed an Opposed Motion to Stay

Discovery, ECF No. 34, to which Plaintiffs responded on May 4, 2015.  ECF No. 37.  On May 8,

2015, the United States filed a Reply in support of its Motion to Stay Discovery, ECF No. 41.

On May 18, 2015, the Court ruled on the United States' Motion to Dismiss I, the United

States' Opposed Motion to Stay Discovery, and Plaintiffs' Motion to Stay Ruling Pending

Jurisdictional Discovery.  *See* May 18 Order, ECF No. 45.  In the May 18 Order, the Court

denied the United States' Motion to Dismiss I without prejudice to refiling.  *Id.* at 4.  The Court

granted the United States' Motion to Stay Discovery in regard to discovery relating to the merits

of the case but otherwise denied the Motion.  *Id.*  The Court granted Plaintiffs' Motion for

Jurisdictional Discovery so as to permit Plaintiffs to take limited discovery on whether Molina

was an employee of the United States, but otherwise denied the Motion.  *Id.*

On July 21, 2015, the United States filed its Amended Motion to Dismiss ("Motion to

Dismiss II"), ECF No. 59, to which Plaintiffs filed their Response on August 14, 2015.  Resp. II,

ECF No. 61.  On September 15, 2015, Plaintiffs filed the Amended Complaint, ECF No. 65.  On

September 29, 2015, the United States filed its third Motion to Dismiss.  Mot. to Dismiss III, ECF No. 68.  On October 16, 2015, Plaintiffs filed their Response.  Resp. III, ECF No. 75.  On October 21, 2015, the United States filed its Reply to Plaintiffs' Response in support of its Motion to Dismiss.  Reply III, ECF No. 76.

## II.    DISCUSSION

In the Amended Complaint, Plaintiffs claim that Molina's negligence caused the collision that occurred on March 7, 2013, and that the United States, as the alleged employer of Molina, is vicariously liable for the collision and resulting damages.  Am. Compl. ¶¶ 7-8, 10.  Plaintiffs further claim that the United States is directly liable for the collision and resulting damages because the United States negligently trained and supervised Molina, and negligently entrusted the bus to him.  *Id.* ¶ 9.

### A.    12(b)(1) Standard

Federal courts are courts of limited jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).  Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336.  A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); *see also Jasper v. Fed. Emergency Mgmt. Agency*, 414 F. App'x 649, 651 (5th Cir. 2011) ("[A]

federal court must determine whether jurisdiction is proper prior to addressing the merits of a case.").  The party asserting jurisdiction constantly bears the burden of proof that the jurisdiction does in fact exist.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998).

In resolving a 12(b)(1) motion to dismiss, a federal court may consider evidence outside the pleadings and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction."  *See Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir. 1981) (explaining that, in resolving a motion to dismiss for lack of subject matter jurisdiction that turns on factual determination, the "district court is not limited to an inquiry into undisputed facts"); *see also Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) ("In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations.").

**B.    Analysis**

In the Amended Complaint, Plaintiffs allege that "Defendant United States was the statutory employer of Molina, vicariously liable for his acts and omissions."  Am. Compl. ¶ 6.

In its Motion to Dismiss III, the United States argues that Molina was not an employee of the United States, but was instead employed by an independent contractor of the United States— MTC.  Mot. to Dismiss III at 4.  The United States asserts that Plaintiffs' claims of vicarious liability for Molina's actions are barred by sovereign immunity because "[t]he United States has not waived its sovereign immunity for claims of negligence committed by [its] independent contractors."  *Id.* at 4.  Next, the United States argues that Plaintiffs' claims of direct

6

negligence—negligent entrustment, supervision, and entrustment—are barred by sovereign immunity because these actions, if even attributable to the United States, "clearly fall[] within the 'discretionary function' exception to the FTCA's waiver of sovereign immunity." *Id.* at 13. Finally, the United States argues that Plaintiffs' Amended Complaint "fails to state a claim against the United States with specific factual allegations sufficient to rise above mere conclusory statements." *Id.* at 16.  The Court addresses these arguments in turn.

### 1.       Plaintiffs' vicarious liability claims

In its Motion to Dismiss III, the United States argues that the Amended Complaint "should be dismissed for lack of subject matter jurisdiction because the United States cannot be held liable for the actions of Molina under the independent contractor exception to the FTCA." *Id.* at 1.  The United States argues that Molina was employed by MTC, not the United States, at the time of the collision, and, therefore, the independent contractor exception to the FTCA applies. *Id.*  The United States further argues that the independent contractor exception applies because the United States did not have sufficient control over Molina such that Molina was an employee of the United States.  *Id.* at 5-6.

In response, Plaintiffs argue that Molina was an employee of the United States under the FTCA because the United States did have sufficient control over Molina.  Resp. II ¶¶ 15-19. Plaintiffs assert that Molina was an employee of the United States because Molina had to undergo a background check by the federal government in order to be hired by MTC, because the United States owned the bus that Molina was driving, and because the United States paid for the fuel and maintenance of the bus as well as for Molina's time driving.  *Id.*

### a. FTCA and the independent contractor exception

Under the doctrine of sovereign immunity, the federal government is immune from suits except to the extent that it consents, thus waiving its immunity. *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (citing *United States v. Mitchell,* 445 U.S. 535, 538 (1980)); *see also Young v. United States*, 727 F.3d 444, 446-47 (5th Cir. 2013) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  Therefore, federal courts only have jurisdiction over suits against the federal government where the federal government has made a clear statement waiving sovereign immunity. *Young*, 727 F.3d at 447.  Moreover, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign." *Linkous*, 142 F.3d at 275 (citing *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992)); *see Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003) (quoting *Linkous*, 142 F.3d at 275); *Charles v. McHugh*, 613 F. App'x 330, 333 (5th Cir. 2015) (quoting *Linkous*, 142 F.3d at 275).

Pursuant to the FTCA, the federal government waives its sovereign immunity in certain instances, including consenting "to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'" *Linkous*, 142 F.3d at 275 (quoting 28 U.S.C. § 1346(b)); *see United States v. Orleans*, 425 U.S. 807, 813 (1976); *Peacock v. United States*, 597 F.3d 654, 659 (5th Cir. 2010).  Under the FTCA, an "[e]mployee of the government includes officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity . . . ." *Logue*, 412 U.S. at 526 (quoting 28 U.S.C. § 2671).  However, the federal government has not waived sovereign immunity with regard to acts committed by its independent contractors. 28 U.S.C. § 2671; *see Linkous*, 142

F.3d at 275 ("The FTCA, however, does not extend to acts of independent contractors.") (citing *Orleans*, 425 U.S. at 813-14); *Peacock*, 597 F.3d at 659 ("Consent to be sued does not extend to the acts of independent contractors working for the Government.").

"Whether one is an employee of the United States or of an independent contractor is determined by reference to federal law." *Cavazos ex rel. Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir. 1985) (citing *Logue v. United States*, 412 U.S. 521 (1973)); *see also Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997) (explaining that whether the alleged tortfeasor was a government employee or an independent contractor, for purposes of determining whether the FTCA applied, was a question of federal law). "The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." *Linkous*, 142 F.3d at 275 (citing *Orleans*, 425 U.S. at 814); *see also Logue*, 412 U.S. at 527-28; *Cavazos*, 776 F.2d at 1264 (discussing the "*Logue-Orleans* daily-detailed-control test" (internal quotation marks omitted)); *Peacock*, 597 F.3d at 659. In this inquiry, the "critical question is . . . not whether the agent must comply with federal standards," *Hines v. United States*, 60 F.3d 1442, 1447 (9th Cir. 1995) *abrogated on other grounds by United States v. Olson*, 546 U.S. 43 (2005), or "whether the . . . [agent] receives federal money and must comply with federal standards and regulations," *Cavazos*, 776 F.2d at 1264 (quoting *Orleans*, 425 U.S. at 815). Instead, the critical issue is "whether [the agent's] day-to-day operations are supervised by the Federal Government." *Cavazos*, 776 F.2d at 1264 (quoting *Orleans*, 425 U.S. at 815). The Fifth Circuit refers to the test as the "*Logue-Orleans* daily-detailed-control" test. *Id.* (internal quotation marks omitted).

In addition to looking at the control of the detailed physical performance, the Fifth

Circuit has found the following factors, cited in Section 220 of the Restatement (Second) of

Agency, relevant to determining if an individual is an employee or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Peacock*, 597 F.3d at 659 (quoting Restatement (Second) of Agency § 220 (1958)).

The Fifth Circuit explains that, "if the government lacks the power to control an individual, plus

several factors listed in Section 220 weigh in favor of independent contractor status, then a court

must conclude that the individual is an independent contractor." *Linkous*, 142 F.3d at 276.

### i. *Logue-Orleans* daily-detailed-control test

In its Motion to Dismiss III, the United States argues that it did not control the detailed

physical performance of Molina, MTC, or Otero County because it "did not have the power to

terminate, direct, or interrupt the employment of Otero or MTC staff."  Mot. to Dismiss III at 6.

Plaintiffs respond that, because the United States required all workers under the IGSA to have

security clearance, the United States did have "a role in the hiring, retention, and termination of

Molina," and, further, that the United States "controlled [Molina] through a chain of command."

Resp. II ¶¶ 16-18.

Applying the *Logue-Orleans* daily-detailed-control test, the United States did not have sufficient control over Molina to render Molina an employee of the United States. Molina received instructions about his work responsibilities either from an employee of MTC or Otero County, but not from ICE. Molina Dep. 13, 17-18. While ICE had the power to grant and revoke Molina's security clearance, and thus his ability to work under the IGSA, ICE did not supervise Molina's day-to-day work. *See* Anderson Dep. 25, 35; Molina Dep. 12, 17-18. In fact, the IGSA explicitly states that the "service provider, not the Government, is responsible for the day-to-day operation of the facility and all the management and quality control actions required to meet the terms of the contract." IGSA, Mot. to Dismiss II, Ex. 1, Attach. A at 44, ECF No. 59-3.[3] In this case the "service provider" refers to Otero County, the contracting party; thus, by the contract, Otero County—not ICE—was responsible for the day-to-day operation of the facility and the transportation to and from the facility. Molina Dep. 17-18. Based on these facts, Molina was not an ICE employee because ICE did not have sufficient control over Molina. *See Linkous*, 142 F.3d at 276 (explaining that independent contractor status was appropriate where the government "exercised no control over the day-to-day rendition of medical services" by a physician at an Army hospital); *Orleans*, 425 U.S. at 814-15; *Logue*, 412 U.S. at 527-28.

Additionally, while ICE required compliance with certain federal regulations such as passing a background check, this sort of control is insufficient to render Molina an ICE employee. *See Hines*, 60 F.3d at 1447 (explaining that, in determining if an individual is an employee under the FTCA, "the critical question is whether the government supervises and controls the day-to-day operations, not whether the agent must comply with federal standards"); *Linkous*, 142 F.3d at 274, 277 (finding that a doctor was an independent contractor, not an

---

[3] The IGSA is marked with three different page-numbering systems. Thus, for clarity in citing to the IGSA, the Court cites to the page numbers provided by the Court's electronic docketing system.

employee of the federal government, despite the fact that she "was required to adhere to all hospital bylaws and [federal] regulations to the same extent as [federal employee] health care providers"); *Burleigh v. James*, No. 1:15-CV-0666, 2015 WL 8540799, at *1 (W.D. La. Dec. 8, 2015) (explaining that, in order for an individual to be an employee of the federal government, "[t]he government must exercise physical supervision over the individual's operations rather than merely prescribing regulations and standards with which the parties must comply"); *Walding v. United States*, 955 F. Supp. 2d 759, 802 (W.D. Tex. 2013) (finding that even detailed federal regulations directing nearly every facet of the work did not entail the necessary daily detailed control to hold federal government liable for entity's negligence).

Certainly, ICE gave directions to individuals who worked for Otero County and/or MTC regarding which detainees to transport, when to transport them, and where to transport them, and these directions were passed down to Molina himself, through a "chain of command."  Anderson Dep. 15-19, 28; Molina Dep. 17-18.  Indeed, in *Burleigh*, the court found that even when the United States sometimes gave instructions directly to employees, this did not indicate control of the detailed physical performance of those employees.  *See* 2015 WL 8540799, at *1.  Thus, the fact that the United States instructed Molina indirectly through a "chain of command" does not evidence detailed physical control of Molina's work as is required to find that Molina was an ICE employee.  *Id.* (finding that the federal government did not have sufficient control over an employee of a contracting agency to make that individual a federal employee even when the federal government sometimes provided instructions or directions directly to employees of that contracting agency).

Plaintiffs argue that the United States' paying an hourly rate for Molina's time and "determin[ing] the wage rate of Molina while he was driving" are evidence that Molina was an

employee of the United States.   Resp. II ¶ 18.   The evidence shows that individuals who work under contracts with the federal government must be paid minimum wages set by the Department of Labor.   Terry Dep. 22-23.   Although the United States, through the Department of Labor, set this minimum pay rate, MTC and Otero County were free to pay their employees above this pay rate.   *Id.* at 21-23, 44.   Indeed it appears that MTC paid Molina above the minimum required rate in this case; even when driving the bus, Molina was paid at the wage rate for detention officers, $18.66 per hour, not the lower wage rate of $15.52 for bus drivers.   *See* Molina Dep. 13; Terry Dep. 21-23.   Thus, it is clear that while the United States set minimum wage rages in general, it did not play an active role in setting Molina's wage; ultimately MTC decided Molina's wage. Terry Dep. 21-24, 44-45.   Moreover, that the United States set a minimum wage rate for all employees working under federal contracts, including Molina, does not indicate that the United States was Molina's employer.   *See Cavazos*, 776 F.2d at 1265-66 (finding that the instructor was not an employee of the United States, despite the fact that the federal government had a minimum salary requirement).   Further, ICE did not pay Molina himself; instead, ICE paid an hourly rate to Otero County for Molina's time driving.   Anderson Dep. 15-19, 28.[4]

Although Plaintiffs assert that the ability to grant and revoke Molina's security clearance, and thereby terminate Molina's ability to work under the IGSA, amounts to the United States controlling Molina and playing "a role in the hiring, retention, and termination of Molina," Resp. II ¶¶ 15-19, this type of control does not transform Molina into an employee of the United States. Requiring individuals working under the contract with Otero County to pass a federal background check does not equate to daily detailed control over those individuals, and indeed,

---

[4] In addition, the fact that an entity, such as Otero County or MTC, receives federal funding does not mean that the United States is liable for the actions of that entity or its employees under the FTCA.   *See Orleans*, 425 U.S. at 818-19 (finding that an entity was not a federal agency for the purposes of FTCA liability, despite the fact that the entity received federal funding).

the facts indicate that ICE had no such control over Molina.  *See Burleigh*, 2015 WL 8540799, at

*2 ("[C]onducting background checks does not constitute control under the FTCA." (citing

*Brooks v. A. R. & S. Enterprises, Inc.*, 622 F.2d 8, 11 (1st Cir. 1980)).  Thus, where ICE did not

control the daily detailed performance of Molina, simply requiring Molina to pass a federal

background check does not make Molina an ICE employee.  *See id.*; *Walding*, 955 F. Supp. 2d at

797, 804 (finding that private entity that contracted with a federal agency to provide housing for

immigrant youth was an independent contractor, despite the fact that the entity was required to

follow extensive government regulations, including mandatory background checks for all

employees).

   While it is true that Molina could not be hired to fulfill contractual duties at the Otero

County Processing Facility without security clearance, granted only after ICE conducted an

extensive background check, this does not amount to ICE having the power to hire or fire

Molina.  *See Burleigh*, 2015 WL 8540799, at *1-2 (explaining that "merely prescribing

regulations and standards [in a contract] with which the parties must comply" does not amount to

control of the detailed physical performance of individuals working under the contract).

Plaintiffs have provided no evidence, aside from this contractual requirement, that ICE played a

role in hiring, firing, or supervising Molina or other MTC employees or even that ICE had a right

to do so.  *See generally id.*; Resp. III.  ICE did not "make[] any recommendations for hiring or

firing of employees."  Ramirez Decl. ¶¶ 14-15; *see* Anderson Decl. ¶ 19-20.  Instead, "staffing

decisions [were] left to the determination of OTERO and/or MTC."  Ramirez Decl. ¶¶ 14-15; *see*

Anderson Decl. ¶ 19-20.  In addition, while ICE planned to revoke Molina's security clearance

after the collision, ICE never instructed Terry to fire Molina.  Terry Dep.  44-45.  Instead, MTC

hired and fired Molina, not ICE, *see* Molina Dep. 5, and Plaintiffs provide no evidence that ICE

had the power to hire or fire Molina, despite arguing that ICE had this power.  *See* Resp. II ¶¶ 15-19.  Thus, where MTC, not ICE, "retained the power to hire, fire, assign or reassign" Molina, it is clear that Molina was not an ICE employee.  *See Cavazos*, 776 F.2d at 1265-66 (finding that an instructor was not a federal employee where the local school district, not the federal government, "retained the power to hire, fire, assign or reassign instructors as it saw fit").

Indeed, if the requirement of security clearance transformed independent contractors into employees, the United States would have no immunity regarding any actions of individuals and entities that contract with ICE to provide detention services.  *See* Anderson Dep. 25 (explaining that, to the witness's knowledge, any person performing under an ICE contract must have security clearance); *see also Logue*, 412 U.S. at 532 (finding an interpretation of the FTCA unpersuasive where it would render "the exclusion of contractors from the definition of 'Federal agency' in § 2671 . . . virtually meaningless").  In light of the fact that waivers of sovereign immunity, if ambiguous, must be construed in favor of the government, *see Linkous*, 142 F.3d at 275, the requirement of a security clearance does not turn Molina into an employee.  *See Walding*, 955 F. Supp. 2d at 802 ("[T]he fact that an agency must comply with voluminous and detailed federal regulations is not sufficient to convert a contractor into a federal employee." (citing *Logue*, 412 U.S. at 530)); *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 908 (C.D. Cal. 2000) *aff'd*, 23 F. App'x 803 (9th Cir. 2001) ("[D]etailed regulations and inspections are no longer evidence of an employee relationship . . . .  The ability to compel compliance with federal regulations does not change a contractor's personnel into federal employees.").

Finally, Plaintiffs claim that the United States' ownership of the bus that Molina drove at the time of the collision is "evidence as to Molina's 'employee' status with the USA."  Resp. II ¶ 18.  While it is true that the United States' ownership of the bus and reimbursement for fuel

15

and maintenance could indicate an employment relationship, *see* Restatement (Second) of Agency § 220, cmt. k ("[I]f the worker is using his employer's tools or instrumentalities, especially if they are of substantial value, it is normally understood that he will follow the directions of the owner in their use, and this indicates that the owner is a master."), in this case, the facts show that the United States' ownership of the bus did not create any sort of control over Molina's actions: Molina was not even aware that United States owned the bus, Molina Dep. 22. Thus, the United States' ownership of the bus in this case is not determinative of an employee relationship. *See Burleigh*, 2015 WL 8540799, at *3 ("[W]e find that, without the element of control, the government does not become an employer by supplying vehicles for transportation services provided by one of its contractors.").

Therefore, although the United States gave Molina security clearance to work under the IGSA, Anderson Dep. 25; reimbursed Otero County for Molina's time driving and for fuel and maintenance for the bus, *id.* at 15-16; and owned the bus that Molina drove, *id.* at 14-15; these factors do not indicate daily detailed control of Molina's work. *See Orleans*, 425 U.S. at 814; *Cavazos*, 776 F.2d at 1264; *Burleigh*, 2015 WL 8540799, at *3. Further, the United States did not hire, fire, or pay Molina directly. *See* Molina Dep. 5-11. Nor did the United States supervise Molina's daily work. *See* Anderson Dep. 35. Thus, Plaintiffs fail to show that the United States had any control over Molina's work, much less the type of daily detailed control over Molina's performance that is required under *Logue-Orleans* daily-detailed-control test. *See Orleans*, 425 U.S. at 814. Ultimately "the level of [the United States'] oversight demonstrated is too general in nature to offset the explicit evidence showing that [MTC] exercised daily control over [Molina]." *See Cavazos*, 776 F.2d at 1266. Thus, the United States did not have sufficient

16

control over Molina to find that Molina was an employee of the United States under the *Logue-Orleans* detailed-daily-control test.  *See Cavazos*, 776 F.2d at 1264.

### ii.  Restatement factors

Now that the Court has found that the United States did not have control over Molina under the *Logue-Orleans* test, the Court turns to the Restatement factors to determine if Molina was an employee of the United States.  *See Peacock*, 597 F.3d at 659.  The factors are:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Id.* (quoting Restatement (Second) of Agency § 220).

These factors "do[] not require mathematical precision"; rather, "if the government lacks the power to control an individual, plus several factors listed in § 220 weigh in favor of independent contractor status, then a court must conclude that the individual is an independent contractor." *Linkous*, 142 F.3d at 276.

Factor (a), the extent of control the United States had over Molina, weighs in favor of independent contractor status, as addressed above.  *See Walding*, 955 F. Supp. 2d at 808 (explaining that factor (a) was encompassed in the daily-detailed control test).

Factor (e), whether the United States or Molina supplied the instrumentalities or tools, seems to weigh in favor of employee status because the United States owned the bus.  Anderson

Dep. 14-15.  However, as explained above, where Molina was unaware that the United States owned the bus, *see* Molina Dep. 22, the United States' ownership of the bus does not demonstrate that the United States had any sort of control over Molina, such to indicate that Molina was an employee rather than an independent contractor, *see* Restatement (Second) of Agency § 220, cmt. k (explaining that when the employer supplies instrumentalities or tools, this indicates that the worker is an employee rather than a contractor, because "it is normally understood that [the worker] will follow the directions of the [employer]" in using the instrumentalities or tools).   Thus, this factor does not weigh in favor of either independent contractor or employee status.

Factor (i), "whether or not the parties believe they are creating the relation of master and servant," weighs in favor of independent contractor status because Molina did not believe that he was an employee of the United States, rather he saw himself as an MTC employee and stated that the United States did not directly control any of his work.  Molina Dep. 5-11, 17-18.  Nor did the United States intend to be an employer of Molina; indeed the United States' relationship to Molina is attenuated, as the United States entered into a contract with Otero County, which, in turn, hired MTC as a subcontractor, which then hired Molina.  Mot. to Dismiss III at 1; Molina Dep. 5-11; Anderson Dep. 22, 31.

The remaining factors—such as the relatively unskilled nature of the Molina's work as a driver, the fact that Molina was paid by the hour, and the fact that Molina's work was part of the regular business of the employer—may well weigh in favor of employee status.  However, such factors would weigh in favor of finding MTC as the employer, not the United States, because MTC was the entity that hired, supervised, and paid Molina for this work.  *See* Molina Dep. 5-11; Anderson Dep. 35.  Thus, while some of these factors certainly weigh in favor of finding

Molina to be an employee, that employment relationship is not with the United States.

Therefore, because the United States did not have daily detailed control over Molina and because

several of the restatement factors weigh against employee status, the Court finds that Molina was

not an employee of the United States under the FTCA.  *See Cavazos*, 776 F.2d at 1264; *Linkous*,

142 F.3d at 276.

### b.   "Person acting on behalf of federal agency"

In addition to asserting that Molina was an employee under the *Logue-Orleans* control

test, Plaintiffs also argue that Molina was also an employee of the United States under the FTCA

because Molina was a "person acting on behalf of a federal agency in an official capacity,

temporarily or permanently in the service of the United States, whether with or without

compensation."  Resp. II ¶ 27 (quoting *Logue*, 412 U.S. at 529-32).

In *Logue v. United States*, the Supreme Court stated, in dicta, that a person might be

"acting on behalf of a federal government," despite being employed by an entity other than the

federal government, if that person was "placed under direct supervision of a federal agency

pursuant to contract or other arrangement."  412 U.S. at 531.  However, the Supreme Court went

on to reject the idea that "employees of a contractor with the Government, whose physical

performance is not subject to governmental supervision, are to be treated as 'acting on behalf of'

a federal agency simply because they are performing tasks that would otherwise be performed by

salaried employees of the Government."  *Id.* at 531-32.

In *Logue*, Nueces County had contracted with the federal government to detain and house

federal prisoners.  *Logue*, 412 U.S. at 523.  The Supreme Court found that individuals working

for Nueces County were not "acting on behalf of the federal government," despite the fact that

they were performing duties that would otherwise be performed by government employees,

where their "physical performance [was] not subject to governmental supervision." *Logue*, 412 U.S. at 531.  Like the employees in *Logue*, Molina was an employee of a private company that was hired to detain and house immigrants on behalf of the United States.  *See id.*; Ramirez Decl. ¶ 4-5, 25.  Thus, Molina was not "acting on behalf of the federal government," despite the fact that his job would otherwise be performed by a government employee, because his performance was not subject the direct supervision of a federal agency but was instead directly supervised by MTC or Otero County, contractors for a federal agency.  *See Logue*, 412 U.S. at 531; Molina Dep. 17-18, Anderson Dep. 35.

Indeed, as the Supreme Court explained in *Logue*, if a worker was an employee of the United States merely because he was performing a job that would otherwise be performed by a government employee, the independent contractor exception to the FTCA "would be virtually meaningless."  *See Logue*, 412 U.S. at 531-32.  The Supreme Court explained that, "it would be a rare situation indeed in which an independent contractor with the Government would be performing tasks that would not otherwise be performed by salaried Government employees," thus nearly all contractors would be considered employees under the FTCA.  *Id.* at 532. Therefore, Molina was not "acting on behalf of the United States"—such that he could be considered an employee under the FTCA—merely because his job would otherwise be performed by a government employee.  *See id.* at 531-32.

### c.  Applicability of the Federal Motor Carrier Safety Regulations

Plaintiffs also argue that the United States is liable for Molina's actions pursuant to the FTCA because the United States is an employer of Molina under the definition set forth in the Federal Motor Carrier Safety Regulations ("FMCSR").  Resp. II ¶ 8 (citing 49 C.F.R. § 383.5). Plaintiffs argue that "Defendant USA had a requirement for adhering to all applicable state and

federal laws, which would include qualifying the drivers under [the] FMCSR."  *Id.* ¶ 21; *see*

Resp. III ¶ 12.  Plaintiffs further argue that Molina was an employee of the United States under §

383.5 of the FMCSR because the United States "owned the commercial motor vehicle (bus) and

required the bus be operated by a driver with a commercial driver's license."  Resp. II ¶ 20

(footnote omitted) (citing 49 C.F.R. § 383.5).

 The United States argues, first, that "Plaintiffs fail to cite any authority in support of their

argument that the FMCSR definition of employee can supersede the definition of employee in

the FTCA"; second, that the FMCSR definition does not apply to the United States because the

United States "did not engage in the physical transportation of the detainees"; and third, that the

definition of "employer" that Plaintiffs cite only applies to a particular portion of the FMCSR

and not to the entire FMCSR.  Mot. to Dismiss III at 11-12; *see* Reply III at 2.

 As explained above, the FTCA waives sovereign immunity for acts committed by

"officers and employees of any federal agency" but not for acts committed by "any contractor

with the United States."  *Orleans*, 425 U.S. at 813-14 (quotation marks omitted) (citing 28

U.S.C. § 2671).  The FTCA defines an "[e]mployee of the government" as:

> (1) officers or employees of any federal agency, members of the military or naval forces
> of the United States, members of the National Guard while engaged in training or duty
> under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of
> a federal agency in an official capacity, temporarily or permanently in the service of the
> United States, whether with or without compensation, and (2) any officer or employee of
> a Federal public defender organization, except when such officer or employee performs
> professional services in the course of providing representation under section 3006A of
> title 18.

28 U.S.C. § 2671.

In addition to the definition of employee in the statute, the Supreme Court has found that

workers are "employees of a contractor with the United States, and not, therefore, employees of a

[f]ederal agency" where the federal government has no authority to control the actions of the

workers.  *Logue*, 412 U.S. at 530; *see also Orleans*, 425 U.S. at 814 (distinguishing between a federal agency and an independent contractor based on "the power of the Federal Government 'to control the detailed physical performance of the contractor'" (quoting *Logue*, 412 U.S. at 528)).  Thus the FTCA already provides a definition of "employee," which the Supreme Court and lower courts have further clarified.  Plaintiffs have provided no reason that the Court should look outside the FTCA, particularly where the courts have given clear direction regarding the meaning of that term.  *See* 28 U.S.C. § 2671; *Logue*, 412 U.S. at 527-28; *see also Orleans*, 425 U.S. at 814.

In addition, the FMCSR definitions are inapplicable to this case.  The FMCSR "requires motor carriers to procure at least a minimum level of public-liability insurance in order to obtain an operating permit."  *Consumers Cty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 365-66 (5th Cir. 2002).  "The purpose of [the FMCSR] insurance requirement is to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial motor vehicle."  *Id.* at 366.  Section 383.5 of the FMCSR defines employer as:  "any person (including the United States, a State, District of Columbia or a political subdivision of a State) who owns or leases a commercial motor vehicle or assigns employees to operate such a vehicle."  49 C.F.R. § 383.5.  Section 390.5, on the other hand, specifically states that the term "employer . . . does not include the United States," and the § 390.5 definition of "employee" specifically states that the term "employee . . . does not include an employee of the United States."  49 C.F.R. § 390.

Plaintiffs argue that the United States is an employer under § 383.5.  Resp. II ¶ 8.  However, § 383.5 provides definitions for words "[a]s used in this part," 49 C.F.R. §§ 383.5, whereas § 390.5 of the FMCSR provides definitions that apply to the entire FMCSR, 49 C.F.R. §

390.5 (explaining that the definitions in § 390.5 are to be used throughout the subchapter, "[u]nless specifically defined elsewhere, in this subchapter"); *see also* 49 C.F.R. § 390.1 ("This part establishes general applicability, definitions, general requirements and information as they pertain to persons subject to this chapter.").  Thus, the FMCSR § 383.5 definition does not apply to this case because it only applies to a limited section of the regulations, *see* 49 C.F.R. § 383.5.

Further, § 390.5 definition of employer—in addition to specifically stating that the term "employer" does not include the United States—does not apply to this case because this definition serves a specific purpose within the FMCSR which is inapplicable here.  *See Consumers Cty.*, 307 F.3d at 366 (explaining that § 390.5 provides definitions that are different from the common law definitions of these terms because, "[b]y eliminating the common law employee/independent contractor distinction, the definition serves to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public").  Therefore, both FMCSR definitions of "employer" are inapplicable to this case.

### d.  Applicability of the borrowed servant doctrine

Plaintiffs also attempt to rely on the Texas state law "borrowed servant" doctrine to assert that Molina was an employee of the United States such that FTCA liability applies in this case. Resp. II ¶ 9.  Again, however, Plaintiffs have failed to explain why the Court should look beyond the FTCA and case law interpreting the FTCA to define "employee," when the Supreme Court has given the Court clear guidance on this issue.  *See* 28 U.S.C. § 2671; *Logue*, 412 U.S. at 527-28; *Orleans*, 425 U.S. at 814.  The Fifth Circuit has stated that "[w]hether one is an employee of the United States or of an independent contractor is determined by reference to federal law." *Cavazos*, 776 F.2d at 1264; *see also Rodriguez*, 129 F.3d at 765 ("Whether [the worker] was an employee of the [government agency] or an independent contractor is a question of federal

law.").  Thus, this Court looks to federal precedent to determining that Molina is not an

employee of the United States—not to state common law regarding the borrowed servant

doctrine.[5]

### 2. Plaintiffs' direct negligence claims

Now that the Court has determined that Plaintiffs' vicarious liability claims against the

United States are barred by sovereign immunity, the Court considers whether Plaintiffs' direct

negligence claims against the United States are likewise barred.  Plaintiffs' Amended Complaint

alleges various theories of direct negligence against the United States: (1) negligent training, (2)

negligent supervision, and (3) negligent entrustment.[6]  Am. Compl. ¶ 9.

The United States first argues that it did not train or supervise Molina and that it did not

entrust Molina with the bus, because Molina was not an employee of the United States.  Mot. to

Dismiss III at 13.  In addition, the United States argues that the Court has no jurisdiction over

these claims due to the discretionary function exception to the FTCA.  *Id.* at 13, 15-16.  Because

the discretionary function argument goes to subject matter jurisdiction, the Court must address

this argument first.  *See Moran*, 27 F.3d at 172 (explaining that a federal court must consider a

motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must

have subject matter jurisdiction before determining the validity of a claim); *Jasper*, 414 F. App'x

at 651 ("[A] federal court must determine whether jurisdiction is proper prior to addressing the

merits of a case.").

---

[5] Further, under the borrowed servant doctrine, the Court looks to whether the borrowing employer or the original employer "has the right of control over the actions of the employee."  *Lara v. Lile*, 828 S.W.2d 536, 538 (Tex. App. 1992).  Thus, it is unclear how this inquiry would result in a different outcome, as both the borrowed servant test and the *Logue-Orleans* test look to the control that the employer had over the worker.  *See Logue*, 412 U.S. 521; *Orleans*, 425 U.S. 807.

[6] Plaintiffs also allege that the United States required unsafe driving and failed to ensure compliance with "with contract o[r] statutory requirements for the trip in question."  Am. Compl. ¶ 9.  Because these actions or omissions fall within the United States' alleged supervisory capacity, the Court addresses these two theories of negligence as falling under the more general allegation of "negligent supervision."

The discretionary function exception to the FTCA states that the FTCA:

shall not apply to [a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Thus, the FTCA preserves sovereign immunity for "acts that are discretionary in nature, acts that involve an element of judgment or choice." *See United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quotation marks omitted).

The Supreme Court has established a two-part test for determining if the discretionary function exception applies, thus preserving sovereign immunity. *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (citing *Gaubert*, 499 U.S. at 322-23). "First, for the exception to apply, the challenged act must involve an element of judgment." *Ashford*, 511 F.3d at 505. "In other words, the Government needs to establish there was 'room for choice' in making the allegedly negligent decision." *Id.* Thus, the first step of the test will be met where "a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action," but not where "federal statute, regulation, or policy specifically prescribes a course of action for an [agency or] employee to follow." *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010). If the first step of the test is met, then, in step two, the court determines if the judgment "is of the kind that the discretionary function exception was designed to shield," that is, "governmental actions and decisions based on considerations of public policy." *Id.* at 568. "Congress designed the discretionary function exception to prevent the judiciary from scrutinizing 'legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). Therefore, the discretionary

function exception only immunizes the United States from suit if the decision was susceptible to public policy considerations. *See id.* at 537–39. If both step one and step two are met, the FTCA preserves sovereign immunity through the discretionary function exception. *See Spotts*, 613 F.3d at 566-68.

Though the evidence indicates that the United States did not supervise and train Molina, even if the United States did supervise and train him, Plaintiffs' claim of negligent supervision is barred by the discretionary function exception to the FTCA. The Fifth Circuit has stated that "[s]upervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function." *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005); *see Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir. 1997) ("The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors."); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."); *Richman v. Straley*, 48 F.3d 1139, 1146-47 (10th Cir. 1995) ("Decisions regarding employment and termination are inherently discretionary . . . . Such sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing." (citation omitted)); *Attallah v. United States*, 955 F.2d 776, 785 (1st Cir. 1992) ("[T]he supervisory functions of the [government agency] constitute discretionary functions as defined by 28 U.S.C. § 2680(a)."); *Walding*, 955 F. Supp. 2d at 782 (explaining that "[c]ourts have . . .

26

generally held that decisions relating to hiring, training, and supervision of employees" are shielded by the discretionary function exception).

Indeed, the Supreme Court explained in *Gaubert* that supervisory tasks could be shielded by the discretionary function exception, even when those tasks were routine.  499 U.S. at 334. The *Gaubert* Court explained: "If the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases."  *Id.*  Thus, Plaintiffs' claims of negligent supervision are barred by sovereign immunity and should be dismissed, even if the supervision involved was of a routine nature.  *See Guile*, 422 F.3d at 231; *Gaubert*, 499 U.S. at 334.

Plaintiffs' claims of negligent supervision would likewise fail under the discretionary function exception under the two-part test.  *See Ashford*, 511 F.3d at 505.  Because deciding how to supervise personnel involves judgment regarding issues such as the amount of oversight required or the frequency of direct observation, step one of the test is met.  *See id.* (explaining that, to meet step one, "the challenged act must involve an element of judgment").  Step two is met because this judgment inevitably involves considerations of public policy, such as how much money to spend on supervisory activities.  *See Spotts*, 613 F.3d at 568 (explaining that step two requires a determination that the judgment "is of the kind that the discretionary function exception was designed to shield"); *Attallah*, 955 F.2d at 784 ("However, how, and to what extent the [government agency] supervises its employees certainly involves a degree of discretion and policy considerations of the kind that Congress sought to protect through the discretionary function exception.").  Thus, Plaintiffs' claim of negligent supervision is barred by

the discretionary function exception to the FTCA.  *See Guile*, 422 F.3d at 231; *Attallah*, 955 F.2d at 784.

Because the decisions regarding training of employees involve the same sort of policy-based judgments as supervision—indeed, training is part of the supervisory role—the Court finds that Plaintiffs' claims of negligent training are also barred by the discretionary function exception to the FTCA.  *See Guile*, 422 F.3d at 231; *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (finding that "allegedly negligent and reckless employment, supervision and training . . . fall squarely within the discretionary function exception"); *Walding*, 955 F. Supp. 2d at 781, 790 (dismissing plaintiffs' claim for negligent training, among other claims, because the discretionary function exception applied).  Likewise, decisions regarding entrusting vehicles to workers are part of the supervisory role of an employer and involve the same type of policy-based judgments as training and supervision.  Thus, Plaintiffs' claim of negligent entrustment is also barred by the discretionary function exception to the FTCA.  *See Guile*, 422 F.3d at 231.  Therefore, all of Plaintiffs' claims of direct negligence against the United States are barred by the discretionary function exception to the FTCA.  *See id.*

### C.    No Jurisdiction to Address 12(b)(6)

The United States also argues that Plaintiffs' Amended Complaint "fails to state a claim against the United States with factual allegations sufficient to rise above mere conclusory statements."  Mot. to Dismiss III at 16.  In response, Plaintiffs argue that they "have pleaded plausible negligence claims against [the] USA under the FTCA."  Resp. III ¶ 20.  In addition, Plaintiffs argue that "even if a complaint is vulnerable to a Rule 12(b)(6) motion, the district court should permit an opportunity for a curative amendment unless it would be futile."  *Id.* ¶ 22.

Because the Court has determined that it does not have subject matter jurisdiction over Plaintiffs' claims against the United States, the Court does not, and indeed cannot, address the United States' claim that Plaintiffs have failed to state a claim upon which relief can be granted. *See Linkous*, 142 F.3d at 275 ("[I]f the act was not committed by an 'employee of the Government,' then the court must dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).").

### D.      Leave to Amend

Further, the Court need not grant leave to amend because Plaintiffs have failed to show that their complaint as amended would not be dismissed—that is, Plaintiffs have failed to show that the Court would have subject matter jurisdiction over the their complaint as amended.  *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) ("While there is a strong presumption in favor of granting leave to amend, a district court may refuse leave to amend if the complaint as amended would be subject to dismissal."); *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) ("[A] district court may refuse leave to amend if the filing of the amended complaint would be futile."); *see also Klein v. U.S. Dep't of Interior*, No. 2:14-CV-00700-GEB, 2014 WL 5473534, at *4 (E.D. Cal. Oct. 23, 2014) (denying leave to amend as futile where "Plaintiff has not shown that the United States waived its sovereign immunity for the claims he has alleged, or for the claims he argues he would allege in an amended pleading").  Because Plaintiffs have failed to show that they can plead claims against the United States that are not barred by sovereign immunity—the Court need not grant leave to amend.[7]  *See Ackerson*, 589

---

[7] In addition, Plaintiffs have asked for leave to amend if their claims were dismissed pursuant to Rule12(b)(6). Resp. III ¶ 22.  Here, however, the Court is dismissing Plaintiffs' claims pursuant to Rule 12(b)(1), because the Court lacks subject matter jurisdiction over the claims.  *See Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).  Moreover, Plaintiffs have had the opportunity, and indeed already have amended their Complaint on September 15, 2015.  *See* Am. Compl.

F.3d at 208; *Varela*, 773 F.3d at 707; *Klein*, 2014 WL 5473534, at *4.  Accordingly, the Court

**DENIES** Plaintiffs' request to leave to amend the complaint.

**III.     CONCLUSION**

For the foregoing reasons, the Court orders the following relief:

**IT IS ORDERED** that the United States' Motion to Dismiss, ECF No. 68, is

**GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for leave to amend the Complaint

is **DENIED**.

The United States is **DISMISSED** from the case.

**SO ORDERED**.

SIGNED this 14th day of January, 2016.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE